UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

------------------------------------------------------------------X
TERENCE C. POWELL,

                Plaintiff,

             -against-

LAB CORPORATION, MR. & MRS. KEVIN
NAPIER, NEW YORK STATE UNIFIED COURT
SYSTEM, NATIONAL GRID, AND IBEW LOCAL
1049,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-3632 (JMA)(GRB)

FILED
CLERK

12/27/2018 11:16 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Terence C. Powell
       *Pro se Plaintiff*

Samera S. Ludwig
Nixon Peabody LLP
70 West Madison Street, Suite 3500
Chicago, Illinois 60602
       *Attorney for Defendant Lab Corporation*

Inez and Kevin Napier
39 Pine Street
Central Islip, New York 11722
       *Pro se Defendants*

Ralph Pernick
Assistant Attorney General
New York State Attorney General's Office
200 Old Country Road, Suite 240
Mineola, New York 11501
       *Attorney for Defendant New York State Unified Court System*

Patrick M. Collins
Christina M. Schmid
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1745 Broadway, 22nd Floor
New York, New York 10019
       *Attorneys for Defendant National Grid*

**AZRACK, United States District Judge:**

Plaintiff Terence C. Powell ("plaintiff"), acting pro se, commenced this action on June 16, 2017 against Lab Corporation[1] ("LabCorp"), Mr. Kevin Napier ("Kevin Napier"), Mrs. Inez Napier ("Inez Napier"), the New York State Unified Court System ("NYSUCS"), National Grid and IBEW Local 1049 (the "Union"), (collectively, "defendants"). Specifically, construing plaintiff's complaint liberally, plaintiff brings claims against all defendants pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his federal civil rights under the Fourth, Sixth and Fourteenth Amendments of the United States Constitution. Plaintiff also alleges conspiracy, and violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Genetic Information Nondiscrimination Act of 2008 ("GINA"). (Compl. at 4-8, ECF No. 1.)[2] Additionally, plaintiff alleges state law claims for "paternity fraud," harassment, false arrest, malicious prosecution, defamation and intentional infliction of emotional distress. (Id. at 9-10.) Before the Court are motions to dismiss filed by LabCorp, Kevin Napier and Inez Napier (together, "the Napiers"), the NYSUCS, and National Grid pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court grants defendants' motions.

## I. BACKGROUND

The following facts are taken from plaintiff's complaint and the record before the Court. In deciding a motion to dismiss, the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court also considers exhibits which are attached or integral to the complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

---

[1] In defendant LabCorp's Memorandum of Law in support of its motion to dismiss it states that its proper name is Laboratory Corporation of America. (Def. LabCorp's Mot. To Dismiss, ECF. No. 27 at 1.)

[2] The Court references the electronic filing system page numbers on the complaint for clarity.

## A. **Paternity Proceedings**

The allegations in the complaint stem from plaintiff's long-time claim of paternity to Durelle Napier ("D. Napier"), the son of his ex-girlfriend, defendant, Inez Napier. On October 13, 1994, an order of filiation was entered adjudicating defendant Kevin Napier the father of D. Napier. (Pl.'s Notice of Additional Facts about the Case ("Pl.'s Notice"), Ex. G August 26, 2013 Suffolk County Family Court Dismissal Order, ECF No. 16.) Plaintiff alleges that on April 26, 1999, he petitioned the Suffolk County Family Court for a paternity test of D. Napier. (Compl. at 12.) On May 27, 1999, the court ordered a DNA blood test, (Pl.'s Notice, Ex. A May 27, 1999 Order), and on July 3, 1999, plaintiff received the DNA test results from LabCorp and the court indicating that he was not the father of D. Napier and his paternity petition was thereafter dismissed. (Id.; Pl.'s Notice, Ex. G.)

Subsequently, in 2012, plaintiff filed a paternity petition in Queens County Family Court seeking another DNA test on D. Napier. (Compl. at 13.) On August 3, 2012, that court dismissed plaintiff's de novo paternity petition finding the proper remedy was for plaintiff to file a motion to vacate the order of filiation entered in Suffolk County Family Court. (Id.; Pl.'s Notice, Ex. G.)

Yet again, on March 15, 2013, plaintiff filed a de novo paternity petition in Suffolk County Family Court seeking an order of filiation adjudicating him to be the father of D. Napier. (Pl.'s Notice, Ex. G.) According to the court's order, in that petition, plaintiff "swore that 'no individual ha[d] been adjudicated the father of this child' despite [plaintiff's] clear knowledge of the existing order of filiation." (Id.) Plaintiff claims that on March 19, 2013, he informed the Suffolk County Family Court that some of the prior court proceedings were omitted from the court transcript. (Compl. at 13.)[3] On August 26, 2013, the court dismissed plaintiff's paternity petition under the

---

[3] Plaintiff's complaint states "omitting evidence from transcript," however, aside from this single reference, plaintiff does not allege any other facts related to this allegation.

doctrine of collateral estoppel. (Pl.'s Notice, Ex. G.) Plaintiff claims that he received an unsigned and unstamped copy of this dismissal order. (Compl. at 8, 14.)

## B. **Plaintiff's Arrests**

Plaintiff alleges that in 2004 he was arrested by Suffolk County police and "charged with stalking by Mrs. Ine[z] Napier at a day care center." (Id. at 12.) He claims that the charge was dismissed on November 22, 2004. (Id.) That same day, a temporary order of protection was issued against plaintiff for both Inez Napier and D. Napier. (Pl.'s Notice, Ex. C, September 22, 2004 Order of Protection.) Plaintiff alleges that he was arrested on April 27, 2006 by Nassau County police and "charged with breaking order of protection by National Grid Security and Mrs. Inez Napier for saying hello to [third] party Subrena Burwell at [his] place of employment National Grid" and for telling her to say hello to Mrs. Napier. (Compl. at 12; Pl.'s Notice, Ex. D, May 2, 2006 Statement of Terrence Powell.) He claims that this charge was dismissed on May 1, 2006. (Compl. at 12.)

On July 25, 2006, plaintiff filed a complaint against defendant Inez Napier in Suffolk County small claims court to reimburse him $4,000 in attorney fees. (Pl.'s Opp. Mem. to Napiers' Mot. to Dismiss, ECF No. 34 at 7, Ex. K, Suffolk County District Court Complaint Form.) Plaintiff claims that on October 25, 2007 he was arrested by a Suffolk County police officer and "charged with assault by Mr. Kevin Napier at Saint Anthony's High School but that the charge was dismissed. (Compl. at 12.) In exchange for the dismissal of his small claims case, plaintiff alleges that he "was suppose[d] to receive a DNA [t]est in return I would drop the [a]ttorney fee charge for the false arrest charged by Mr. Kevin Napier. I'm still waiting to receive the DNA test for my son Durelle Napier." (Pl.'s Opp. Mem. to Napiers' Mot. to Dismiss at 7-8, Ex. K.)

**C. Plaintiff's Employment and Termination**

Plaintiff was employed by National Grid from at least 2006 through April 7, 2011 when he was terminated following his second violation of National Grid's Anti-Drug/Alcohol Program. (Compl. at 7, 12; Affirmation of Christina M. Schmid ("Schmid Aff."), Ex. C, Termination Letter, ECF No. 29-2.) Plaintiff alleges that from November 2008 to March 2011 he was subjected to drug testing by National Grid a total of sixteen times "without the computer selection process," including when he was "discharged from National Grid for a drug test that was not random." (Compl. at 7, 12, 13.) Plaintiff claims his call to the business office of IBEW 1049 for documentation on National Grid's random drug testing program was ignored on several occasions. (Id. at 12-13.) He claims that after he contacted the National Labor Relations Board he received documentation that stated that all testing must be random. (Id.)

**D. Plaintiff's Allegations**

Though framed as a Section 1983 claim, it appears that plaintiff's complaint is yet another feeble attempt to claim paternity to the Napiers' son, D. Napier. Plaintiff alleges that defendants LabCorp, National Grid and the NYSUCS conspired against plaintiff to keep him from fatherhood. (Id. at 7, 9.) Plaintiff further alleges that defendants National Grid, LabCorp and NYSUCS are "business associates" because National Grid and NYSUCS both utilized LabCorp for testing purposes. (Id. at 7.) Plaintiff claims that these three defendants "collu[ded]" and "conspired" with one another in the administration and reporting of his drug and paternity testing. He claims further that he was subjected to drug testing that was not random. (Id. at 7, 9.) Finally, he claims that the Napiers "collu[ded] with the NYSUCS in making false police reports, having him falsely arrested and maliciously prosecuted. (See Pl.'s Opp. Mem to Napiers' Mot. to Dismiss at 2-9.)

Plaintiff alleges that he has been injured in the following manner: "loss of enjoyment of life, lost earning capacity, lost wages, mental anguish, inconvenience, injury to professional standing, injury to character and reputation, injury to credit standing, emotional distress, mental distress." (Compl. at 9.)  He seeks the "HELP of the court to make these corporations understand that family is business also.  Fatherhood is a civil and natural right and that you conspired to keep me from these rights, so you must pay."  (Id.)  Specifically, plaintiff seeks the following relief and alleges the following claims against the specific defendants: (1) LabCorp: twenty-five million dollars for "paternity fraud, illegal random testing, and conspiracy"; (2) NYSUCS: ten million dollars for "paternity fraud, false arrest, conspiracy, omitting evidence from transcript, denial of justice, defamation of character, unsigned and unstamped dismissal for a DNA test for my son, and speedy trial"; (3) the Napiers: one-hundred thousand dollars for "false arrest, paternity fraud, conspiracy, defamation of character, and harassment"; (4) National Grid: ten million dollars in backpay for "false arrest, conspiracy, illegal random testing policies, harassment, defamation of character"; and (5) IBEW Local 1049: ten million dollars for "withholding drug testing documentation, conspiracy, harassment, defamation of character, illegal random drug testing policies." (Id. at 9, 10.)

**E.  Procedural History**

On June 16, 2017, plaintiff filed a handwritten complaint with this Court, (ECF No. 1.), and on September 24, 2017, plaintiff filed a handwritten notice of additional facts about the case. (ECF No. 16.)  The NYSUCS filed its motion to dismiss for lack of jurisdiction and for failure to state a claim on November 10, 2017.  (ECF No. 25.)  Defendants LabCorp and National Grid filed individual motions to dismiss on November 17, 2017.  (ECF No. 27, 29.)   Plaintiff filed a single opposition to the motions of the NYSUCS, LabCorp and National Grid.  (ECF No. 29-3.)  On June

12, 2018, the Court denied the defendants' motions to dismiss without prejudice subject to reinstatement after the Napiers filed their motion to dismiss.  On July 11, 2018, the Napiers, proceeding pro se, filed a motion to dismiss the complaint (ECF No. 33), and on July 23, 2018, plaintiff filed his opposition to the Napiers' motion.  (ECF No. 34.)  The Union was served, (ECF No. 12), but has not appeared in this case.

## II. DISCUSSION

### A. **Standard of Review**

The court is mindful that when considering a motion to dismiss a pro se complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

#### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see id.  In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true.  Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  However, the Court should not draw inferences favorable to the party asserting jurisdiction.  Id.  In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements

contained therein. <u>J.S. ex rel. N.S. v. Attica Cent. Sch.</u>, 386 F.3d 107, 110 (2d Cir. 2004); <u>see also</u> <u>All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.</u>, 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

### 2. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. <u>Twombly</u>, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006).

### 3. Federal Jurisdiction

28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." "Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court <u>sua</u> <u>sponte</u>." <u>Lyndonville Sav. Bank & Trust Co. v. Lussier</u>, 211 F.3d 697, 700-01 (2d Cir. 2000). "If subject matter jurisdiction is lacking, the action must be dismissed." <u>Id.</u> at 700-01; <u>see also</u> Fed. R. Civ. P. 12(h)(3). The party asserting jurisdiction bears the burden of proof. <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 96 (2010); <u>DiTolla v. Doral Dental IPA of N.Y.</u>, 469 F.3d 271, 275 (2d Cir. 2006).

"A case aris[es] under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689-90 (2006) (internal quotation marks and citations omitted). A plaintiff invokes § 1331 jurisdiction when he pleads a "colorable claim" arising under the Constitution or federal law. Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006). A claim alleging federal question jurisdiction "may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" Id. at 513 n. 10 (quoting Bell v. Hood, 327 U.S. 678, 682–683 (1946)).

## B. Timeliness of Plaintiff's Section 1983 Claims

Statute of limitations is an affirmative defense. See F.R.C.P. 8(c); see also Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995). Accordingly, a court should only grant a motion to dismiss based on a statute of limitations defense where it is apparent from the face of the pleading that the claim is time-barred. Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86–87 (2d Cir. 2000).

The statute of limitations for claims brought pursuant to Section 1983 is determined by state law, and in New York State, the statute of limitations for 1983 claims is three years. Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). Although the relevant limitations period is determined by state law, federal law governs the accrual date of a Section 1983 claim. Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994); Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980). Such a claim accrues when the plaintiff "knows or has reason to know" of the injury that forms the basis of the claim. Eagleston, 41 F.3d at 871; Singleton, 632 F.2d at 191. This does not require the plaintiff's awareness of all consequences of an action, but only knowledge "that he

is suffering from a wrong for which damages may be recovered in a civil action." <u>Singleton</u>, 632 F.2d at 192.

Plaintiff filed his complaint on June 16, 2017, <u>see</u> ECF No. 1, so any Section 1983 claims that accrued before June 16, 2014 are time-barred. <u>See</u> <u>Shomo</u>, 579 F.3d at 181. While the precise basis for plaintiff's Section 1983 claims are not entirely clear from the complaint, it is evident that his claims arise from events that all occurred prior to June 16, 2014.[4] Specifically, plaintiff's Section 1983 claims relate to the New York State Family Courts' 1999, 2012 and 2013 orders dismissing plaintiff's paternity petitions as well as the court-ordered DNA test performed by LabCorp in 1999 establishing that plaintiff "is not the biological father of the child, Derrell(sp) Napier." (<u>see</u> Compl. at 12-14; Pl.'s Notice, Ex. B.) Additionally, plaintiff's allegations are based upon his 2004, 2006 and 2007 arrests for stalking, violating an order of protection and assault, respectively. (Compl. at 12; <u>see</u> Pl's Opp. Mem. to Napiers' Mot. to Dismiss.) Finally, plaintiff alleges that his Section 1983 claims result from being subjected to his former employer's drug testing program from 2006 through 2011, which led to his April 2011 termination for failing a drug test administered by LabCorp. (Pl.'s Notice at 2; Compl. at 7, 12.) Notably, it appears from the complaint that the plaintiff knew or had reason to know of these acts at or about the time that they happened. As all of these acts occurred prior to June 16, 2014, plaintiff's Section 1983 claims are time-barred.

### 1. Equitable Tolling

Although not raised by plaintiff, in light of his <u>pro se</u> status, the Court also has considered whether the doctrine of equitable tolling applies. With respect to equitable tolling in Section 1983 actions, "it is well-settled that federal courts should borrow the forum state's tolling rules." <u>Ellis</u>

---

[4] Notably, plaintiff's complaint alleges that the events giving rise to his claim occurred on August 26, 2013, three years and ten months before he filed the instant complaint. (<u>See</u> Compl. at 5.)

v. Wilkinson, 81 F. Supp. 3d 229, 234 (E.D.N.Y. 2015) (citing Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002)). "As the Second Circuit has explained, New York courts have adopted the same equitable tolling doctrine that exists under federal law." Id. (citing Keating v. Carey, 706 F.2d 377, 382 (2d Cir. 1983)). "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996). The Second Circuit "has applied the doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights, or h[as] asserted his rights in the wrong forum.'" Id. at 12 (quoting Miller v. Int'l Tel & Tel. Corp., 755 F.2d 20, 24 (2d Cir. 1985)); see also Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir.2007) (noting that New York law authorizes the use of the equitable estoppel doctrine to toll a statute of limitations "when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action") (citation omitted). Thus, "[a]s a general matter, a litigant seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)).

Here, there is absolutely no basis to apply the doctrine of equitable tolling. Plaintiff's own allegations demonstrate that he was aware of defendants' alleged violations at the time they occurred. For example, plaintiff alleges that he filed numerous paternity petitions in family court and complained to the Union about National Grid's drug testing policy. (See Compl. at 7, 12-14.) Plaintiff does not allege that he was precluded from filing his complaint in a timely manner by any fraud or deceit on the part of any of the defendants. Thus, the Court finds that plaintiff is not

entitled to equitable tolling.  Accordingly, plaintiff's Section 1983 claims are dismissed as time-barred.

## C.  Section 1983

Even if plaintiff's Section 1983 claims were not time-barred, they are subject to dismissal for lack of subject matter jurisdiction and for failure to state a claim.

Section 1983 provides in pertinent part:

> [e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured .…

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).  In order to state a Section 1983 claim, a plaintiff must allege two essential elements.  First, the conduct challenged must have been "committed by a person acting under color of state law." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks and citation omitted).  Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id.  With these standards in mind, the Court considers plaintiff's claims.

### 1. Claim Against the NYSUCS

Initially, the Court addresses the NYSUCS's argument that plaintiff's claims against it are barred by the Eleventh Amendment and, therefore, it is entitled to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

The Eleventh Amendment to the United States Constitution provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As a result, absent a state's consent to suit or an express statutory waiver, the Eleventh Amendment bars federal court claims by private parties against states. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 362, 121 S. Ct. 955, 962 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). Eleventh Amendment immunity also extends to suits against "state agents and state instrumentalities that are, effectively, arms of a state." Gollomp v. Spitzer, 568 F.3d 355, 366-68 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)). This includes the New York State Unified Court System. See McKnight v. Middleton, 699 F. Supp.2d 507, 521 (E.D.N.Y. 2010); Gollomp, 568 F.3d at 368. Accordingly, because the NYSUCS is entitled to Eleventh Amendment immunity, plaintiff's Section 1983 claims against it are dismissed for lack of subject matter jurisdiction.

### 2. Claims Against the Napiers, LabCorp, National Grid

Plaintiff alleges Section 1983 claims against the Napiers, LabCorp, and National Grid for violations of the Fourth and Fourteenth Amendments of the United States Constitution and also alleges that these defendants participated in a conspiracy. As noted above, in order to state a claim

for relief under Section 1983, a plaintiff must allege, <u>inter alia</u>, that the conduct challenged was "committed by a person acting under color of state law." <u>Cornejo</u>, 592 F.3d at 127 (quoting <u>Pitchell</u>, 13 F. 3d at 547). Because these defendants are private actors they cannot be liable under Section 1983.

However, private actors, such as the defendants, may be considered to be acting under the color of state law for purposes of Section 1983 if the private actor was a "'willful participant in joint activity with the State or its agents'", <u>Ciambriello v. Cnty. of Nassau</u>, 292 F.3d 307, 324 (2d Cir. 2002) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), or conspired with a state actor to violate a plaintiff's constitutional rights. <u>Id.</u> at 323–24. To state a plausible Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." <u>Id.</u> at 324–25 (citing <u>Pangburn v. Culbertson</u>, 200 F.3d 65, 72 (2d Cir.1999)). "A merely conclusory allegation that a private entity acted in concert with a state actor," <u>id.</u> at 324, or "engaged in a conspiracy to deprive the plaintiff of his constitutional rights," <u>id.</u> at 325, "does not suffice to state a § 1983 claim against the private entity." <u>Id.</u> at 324 (citing <u>Spear v. Town of West Hartford</u>, 954 F.2d 63, 68 (2d Cir. 1992)).

Here, plaintiff attempts to bring Section 1983 claims against defendants, the Napiers, LabCorp, and National Grid based on a theory that they conspired with defendant, the NYSUCS in the administration and reporting of plaintiff's paternity test and drug tests, and in having plaintiff arrested multiple times. However, the factual allegations in plaintiff's complaint concerning the alleged conspiracy between the defendants are conclusory and utterly implausible. Plaintiff alleges: "I realized with paper work LabCorp, National Grid and New York Family Court in

Suffolk are business associates because they use LabCorp for testing purposes (collusion)." (Compl. at 7.) Plaintiff's conspiracy claim seems to rest on the allegation that LabCorp administered both, the 1999 paternity test plaintiff requested in the Suffolk County Family Court proceeding, and National Grid's employee drug tests between 2008 and 2011. (See Pl.'s Opp. to Defs.' Mot. to Dismiss.) Thus, plaintiff alleges, the parties must have "concerted" with each other and engaged in "fraud" because National Grid's drug tests were not conducted randomly and because "[he] did not agree with the results of the DNA test." (Pl.'s Notice at 1.) Plaintiff also alleges that the Napiers colluded with the NYSUCS in having him "false[ly] arrested" multiple times without being subjected to prosecution. (Pl.'s Opp. Mem. to Napiers' Mot. to Dismiss at 1-3.) Plaintiff alleges "[t]he agreement in the conspiracy . . . is through Judiciary and financial mean[s] to stop plaintiff [ ] from proving paternity fraud took place in the DNA test of Durelle Napier by LabCorp defendant." (Pl's Opp. Mem. to Defs.' Mot. to Dismiss at 5.)

Aside from these illogical allegations, plaintiff fails to allege specific facts demonstrating that an improper relationship, much less, any relationship, existed between the NYSUCS and any of the other named defendants. Such conclusory and purely speculative allegations are insufficient to state a Section 1983 conspiracy claim. See Ciambriello, 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); see also Robbins v. Cloutier, 121 F. App'x 423, 425 (2d Cir. 2005) (finding Section 1983 conspiracy claim insufficient where plaintiff merely alleged that defendants "acted in a concerted effort" to agree not to hire plaintiff and to inform others not to hire plaintiff). Though "[a] plaintiff is not required to list the place and date of defendant's meetings and the summary of their conversations when he pleads conspiracy, [ ] the pleadings must present facts tending to show agreement and concerted action." Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y.2005) (internal quotations and citations omitted).

Here, plaintiff makes no allegations from which the Court could construe joint action by any of the defendants, or that any of these defendants conspired with the NYSUCS to deprive plaintiff of some constitutional right. Thus, plaintiff has not alleged a plausible conspiracy claim. Because defendants are not state actors, there is no basis for a Section 1983 claim against them. Accordingly, plaintiff fails to state a Section 1983 claim against any of the defendants[5] and the claim is dismissed for this reason as well.

**D. Title VII and GINA Claims[6]**

**1. Title VII Claim**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). As an initial matter, plaintiff cannot allege a Title VII claim against the Napiers, LabCorp, or the NYSUCS as none of these defendants were the plaintiff's employer, and therefore, the statute is inapplicable to these three defendants. See Clackamas Gastroenterology Assoc., P.C. v. Wells, 538 U.S. 440, 450, 123 S.Ct. 1673, 155 L.Ed.2d 615 (2003) (determining that an employer, for purposes of the antidiscrimination laws, is an entity that "can hire and fire employees, can assign tasks to employees and supervise their performance . . . "); see also Stinnett v. Delta Air Lines, Inc., 278 F. Supp. 3d 599, 610 (E.D.N.Y. 2017) (dismissing Title VII claim against Quest Diagnostics

---

[5] To the extent plaintiff alleges a Section 1983 claim against the Union, he fails to raise a colorable claim. The Union is not a private actor and plaintiff fails to allege any facts bringing the Union under the ambit of Section 1983.

[6] Defendant National Grid contends that plaintiff has failed to exhaust his administrative remedies and therefore his Title VII claim should be dismissed. (Def. National Grid's Mot. To Dismiss, ECF. No. 29-1 at 5, n.5.) The Court recognizes that as a prerequisite to filing suit under both Title VII and GINA, a private plaintiff must first exhaust all administrative remedies, see Chin v. Port Authority of New York & New Jersey, 685 F.3d 135, 146 (2d Cir. 2012) (Title VII); Yajaira Bezares C. v. Donna Karan Company Store LLC, Nos. 13 Civ. 8560, 13 Civ. 9123, 2014 WL 2134600, at *5 (S.D.N.Y. May 22, 2014) (GINA) (citing 42 U.S.C. § 2000ff-6). Though plaintiff fails to allege that he filed a timely charge with the EEOC prior to brining the instant claims, the Court declines to address this issue.

Clinical Laboratories because it was not plaintiff's employer).  Therefore, the Court will address plaintiff's Title VII claim only as it relates to his former employer, National Grid.

As noted above, Title VII prohibits discrimination against someone by that person's employer because of such individual's race, color, religion, sex, or national origin.  Littlejohn v. City of New York, 795 F.3d 297, 320 (2d Cir. 2015) (citing 42 U.S.C. 2000e-2(a)(1)).  Claims of employment discrimination brought pursuant to Title VII are analyzed under the familiar burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  "Under this framework, a plaintiff must first establish a prima facie case of discrimination."  Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (citation omitted).  "On a motion to dismiss, the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to plausible.'"  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015) (quoting Twombly, 550 U.S. at 570)).  "Nevertheless, the elements of the prima facie case 'provide an outline of what is necessary to render a plaintiff's . . . claims for relief plausible.'"  Bivens v. Inst. for Cmty. Living, Inc., No. 14-CV-7173, 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) (quoting Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013)) (internal quotation marks and alterations omitted).

In order to plead a plausible claim of Title VII discrimination, the plaintiff must allege that (1) he is a member of a protected class; (2) he is qualified for a disputed employment position; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.  See Soloviev v. Goldstein, 104 F. Supp. 3d 232, 247 (E.D.N.Y. 2015) (citation omitted).  The facts alleged in the complaint must

provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311. "[N]aked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." Soloviev, 104 F. Supp. 3d at 249 (citations omitted).

Plaintiff's complaint falls far short of these pleading requirements. Though his complaint references Title VII, plaintiff fails to allege that he was discriminated against based on his membership in a protected class. Instead, plaintiff merely alleges, "my employer National Grid started testing me with the random drug testing program 16 times without the computer selection process." (Compl. at 7.) Where a plaintiff fails to allege that he is a member of a protected class, he fails to allege a Title VII claim. See Connell v. City of New York, No. 00 Civ. 6306, 2002 WL 22033, at *3 (S.D.N.Y. Jan. 8, 2002) (dismissing Title VII claim where plaintiff failed to allege that he was member of a protected class). So too, here, plaintiff fails to allege that he is a member of a protected class and, therefore, fails to meet the first requirement of a prima facie Title VII case. Furthermore, "[n]otwithstanding the liberal pleading standard in Title VII cases (especially for pro se litigants), the complaint as written does not describe any factual allegations to support the vague and conclusory assertion that the treatment he received by [National Grid] was discriminatory." Ercole v. U.S. Dep't of Transp., No. 07-CV-2049, 2008 WL 4190799, at *7 (E.D.N.Y. Sept. 10, 2008) ("[t]he complete absence of any such allegations articulating plaintiff's discrimination claim fails to satisfy even this most liberal standard."). Accordingly, plaintiff's Title VII claim against National Grid is dismissed.[7]

---

[7] To the extent plaintiff asserts a Title VII claim against the Union, that claim is also dismissed because plaintiff's conclusory allegations that the Union supported National Grid's illegal drug testing policies fails to raise a colorable claim under Title VII.

## 2. GINA Discrimination Claim

GINA makes it unlawful for an employer "to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee . . . because of genetic information with respect to the employee."  42 U.S.C. § 2000ff-1(a)(1).  GINA further prohibits an employer from "request[ing], requir[ing], or purchas[ing] genetic information with respect to an employee. . ." Id. § 2000ff-1(b).  "The Act defines 'genetic information' as (1) an employee's genetic tests; (2) the genetic tests of the employee's family members; or (3) the manifestation [of] a disease or disorder in the employee's family members." Grimes, 2017 WL 2258374, at * 10 (citing 42 U.S.C. § 2000ff(4)) (dismissing GINA claim where plaintiff failed to allege that she was discriminated against because of genetic information).  To state a claim for genetic discrimination under GINA, plaintiff must allege "(1) that []he was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from [p]laintiff's genetic tests." Allen v. Verizon Wireless, No. 12 Civ. 482, 2013 WL 2467923, at *23 (D. Conn. June 6, 2013) (citation omitted).

As it relates to his GINA claim, plaintiff alleges that National Grid used "genetic test results in making decisions about [his] employment."  (Pl.'s Opp. Mem. to Defs.' Mot. to Dismiss at 5-6.)  He alleges "[t]his also includes "firing, to limit, segregate, classify, or otherwise mistreat an employee, i.e. [p]laintiff Terence Powell."  (Id. at 6.)  Though plaintiff's allegations are unclear, to the extent he alleges that National Grid improperly terminated his employment based on his failing a second drug test, no GINA claim lies.  The EEOC's implementing regulations to GINA make clear that "[a] test for the presence of alcohol or illegal drugs is not a genetic test," 29 C.F.R. § 1635.3(f)(4)(i), "meaning that a request for such a test does not constitute a request for genetic

information under EEOC rules." Lewis v. Gov't of the District of Columbia, 161 F. Supp. 3d 15, 33 (D.D.C. 2015).

The Court further finds that plaintiff has not pleaded any facts indicating that defendant requested or obtained plaintiff's "genetic information" and discriminated against him on the basis of such "genetic information." Thus, in addition to being barred for failing to exhaust his administrative remedies, as discussed above, plaintiff's claim for genetic discrimination must be dismissed because the plaintiff fails to allege any facts to support this claim. See Verizon Wireless, 2013 WL 2467923, at *23–24 (GINA claim based on "conclusory allegations do[es] not meet the standard set forth in Twombly and Iqbal"). Accordingly, plaintiff's GINA claim is dismissed.

**E.  State Law Claims**

Liberally construing plaintiff's complaint, he appears to assert state law claims for false arrest, malicious prosecution, defamation, intentional infliction of emotional distress, harassment, and fraud. Where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction of remaining state law claims. 28 U.S.C. § 1367(c)(3); Rocco v. New York State Teamsters Conference Pension & Retirement Fund, 281 F.3d 62, 72 (2d Cir. 2002). A district court may, however, "at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction." Parker v. Della Rocco, 252 F.3d 663, 666 (2d Cir. 2001) (citation omitted). In this regard, the court must balance the "values of judicial economy, convenience, fairness, and comity." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). The balance of factors here weigh in favor of exercising supplemental jurisdiction over plaintiff's state law claims against the moving defendants because those claims are frivolous, and

the defendants should not be subject to additional frivolous litigation in state court.[8]  For the

reasons set forth below, plaintiff's state-law claims fail and are therefore dismissed.

### 1. False arrest, malicious prosecution, defamation, intentional infliction of emotional distress and harassment

New York's one-year statute of limitations governs claims for false arrest, malicious

prosecution, defamation and intentional infliction of emotional distress.  N.Y. CPLR § 215(3); see

e.g., Abdallah v. City of New York, No. 95 Civ. 9247, 2001 WL 262709, at *5 (S.D.N.Y. March

16, 2001) (intentional infliction of emotional distress); E.E.O.C. v. Die Fliedermaus, 77 F. Supp.

2d 460, 473 (S.D.N.Y. 1999) (defamation); Greiner v. County of Greene, 811 F. Supp. 796, 800

(N.D.N.Y. 1993) (false arrest and malicious prosecution).[9]

As plaintiff filed the instant complaint on June 16, 2017, any alleged intentional tort claims

must have accrued after June 15, 2016.  According to his complaint, all of plaintiff's claims,

whether state or federal, accrued on or before August 26, 2013, the date of the Suffolk County

Family Court's dismissal of plaintiff's third paternity petition.  (See Compl. at 5.)  Therefore,

plaintiff's intentional tort claims are time-barred.  Accordingly, plaintiff's claims for false arrest,

malicious prosecution, defamation, intentional infliction of emotional distress and harassment are

dismissed.

---

[8] To the extent plaintiff alleges state law claims against the Union, the Court declines to exercise supplemental jurisdiction over those claims as the Union has not appeared in this action and, thus, has not moved to dismiss the state law claims against it.

[9] "Harassment is not a cognizable claim under New York State common law."  DiBlanca v. Town of Marlborough, No. 1:13-CV-1579, 2014 WL 2866341, at *8 (N.D.N.Y. June 24, 2014) (citing CBS Inc. v. Arcane Visuals, LTD., 156 Misc.2d 665, 667 (N.Y. Civ. Ct. 1993); Jerulee Co. v. Sanchez, 43 A.D.3d 328, 329 (1st Dept. 2007)); see also Beneficial Capital Corp. v. Richardson, No. 92 Civ. 3785, 1995 WL 324768, at *1 (S.D.N.Y. May 31, 1995) ("There is no civil cause of action for harassment in New York law", however "[e]ven were such a claim maintainable, it would be governed by the one-year statute of limitations for intentional torts.") (citing N.Y. Civ. Prac. L. & R. § 215(3)).

## 2. Fraud

Plaintiff appears to allege that LabCorp, the Napiers and the NYSUCS committed "paternity fraud" or conspired together to commit "paternity fraud".

"Under New York law, the elements of common law fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." Chanayil v. Gulati, 169 F.3d 168, 171 (2d Cir. 1999) (citation and internal quotation marks omitted). Further, allegations of fraud must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Conclusory allegations of fraud will not survive Rule 9(b)'s heightened pleading standard, and therefore, will be subject to dismissal at the motion to dismiss stage. See Nasso v. Bio Reference Labs., Inc., 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012) (citing Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir. 1971)). Generally, to comply with Rule 9(b)'s specificity requirements, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). Furthermore, when fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant. Zerman v. Ball, 735 F.2d 15, 22 (2d Cir.1984).

In the instant case, plaintiff fails to plead fraud with sufficient particularity to survive a motion to dismiss. Plaintiff merely alleges that "after receiving DNA test results from LabCorp

and Suffolk Family Court" on July 30, 1999, he contacted a LapCorp employee and told him that

"[he] did not agree with the results of the DNA test." (Pl.'s Notice at 1.) Plaintiff further alleges:

> the [d]efendant New York State Unified Court System decided to unify the court system to deny the plaintiff justice under the law. 'Paternity Fraud'. By being in business with LabCorp it made the [d]efendant Unified Court System make the[i]r[] decisions based on business not truth and justice. By doing this it gave Mr. and Mrs. Kevin Napier [d]efendant[s] the power of coercion to get me Terence Powell plaintiff arrested without probable cause of committing a crime without g[i]ving me the ability to get justice.

(Pl.'s Opp. Mem. to Defs.' Mot. to Dismiss at 2.) It seems that plaintiff relates the alleged fraud

in the DNA test results to his allegations of false arrests. (Id.) As discussed above in regard to

plaintiff's Section 1983 conspiracy claim, such vague and conclusory allegations are insufficient

to state a claim and certainly fail to satisfy Rule 9(b)'s heightened pleading requirement. Further,

to the extent plaintiff's claims can be read to allege conspiracy to commit fraud, under New York

law, "civil conspiracy to commit fraud, standing alone, is not actionable . . . if the underlying

independent tort has not been adequately pleaded." Vasile v. Dean Witter Reynolds Inc., 20

F.Supp.2d 465, 482 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2d Cir. 2000) ("New York does not

recognize conspiracy as an independent cause of action in tort . . ."). Thus, plaintiff's fraud claim

and conspiracy to commit fraud claim are dismissed.

Plaintiff's fraud claim also fails on the grounds of collateral estoppel and under the Rooker-

Feldman doctrine. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in

a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and

decided against that party . . . whether or not the tribunals or causes of action are the same.'"

Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) (citing Ryan v. New York Tel. Co., 62

N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984). "To determine whether the issue in

the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie

a judicial decision, not the legal theories underlying the complaint." Yeiser v. GMAC Mortg. Corp., 535 F. Supp. 2d 413, 424-25 (S.D.N.Y. 2008) (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005)).  "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id.

Here, plaintiff is collaterally estopped from alleging paternity fraud as the Suffolk County Family Court dismissed plaintiff's paternity petitions in two prior proceedings finding "a 0 % chance that the [plaintiff] is the father of Durrell[e]."  (Pl.'s Notice, Ex. G) (dismissing plaintiff's 2013 paternity petition based on collateral estoppel finding that plaintiff had been given a full opportunity to be heard with regard to the paternity issue).[10]  Thus, the state court has already ruled "that the order of filiation [ ] and the dismissal of the 1999 petition preclude the petitioner from once again raising the issue of paternity." (Id.)  Therefore, plaintiff's instant paternity fraud claim and conspiracy to commit fraud claim are barred by collateral estoppel.

Plaintiff's paternity fraud claim is also barred under the Rooker-Feldman doctrine.  The Rooker-Feldman doctrine recognizes that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005)).  "The doctrine applies when a litigant seeks to reverse or modify a state court judgment, [ ], or asserts claims that are 'inextricably intertwined' with state court determinations." Park v. City of New York, No. 99 Civ. 2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan.16, 2003) (citations omitted).  The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and

---

[10] Plaintiff alleges that he also filed a petition in Queens Family Court seeking another DNA test on D. Napier but that the case was dismissed on August 3, 2012.  (Compl. at 13.)

rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). As discussed above, plaintiff has already raised the issue of paternity numerous times in state court and he cannot now seek to modify those state court judgments by claiming "paternity fraud" which is, at the least, "inextricably intertwined" with those state court determinations. Accordingly, plaintiff's paternity fraud claim and conspiracy to commit fraud claim are dismissed for this additional reason.

**F. Leave to Amend**

While "pro se plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." Boddie v. New York State Div. of Parole, No. 08–CV–911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr.17, 2009) (citations omitted). Here, because the deficiencies in the claims dismissed by the Court are substantive and would not be cured with better pleading, leave to amend the complaint is denied.

### III.    CONCLUSION

For the reasons set forth above, the Court dismisses all of plaintiff's claims against the moving defendants. Further, the Court dismisses plaintiff's federal claims against the Union because those claims are not colorable. To the extent plaintiff alleges state law claims against the Union, the Court declines to exercise supplemental jurisdiction over those claims and dismisses those claims without prejudice.

The Clerk of the Court is directed to close this case and to send a copy of this Order to the pro se plaintiff.

**SO ORDERED.**
Dated:  December 27, 2018
Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge